GEORGE H. MACY et al., executors of Oliver S. Carter, deceased,

*v.*

THE MERCANTILE TRUST COMPANY et al.

[Filed December 23d, 1904.]

1. The jurisdiction of the orphans court to pass upon the right of an executor to turn over or appropriate securities for the payment of a legacy, when dependent upon the construction of the will, must be settled in a proceeding instituted for that purpose on actual notice to all parties interested, and a decree settling the balance due on the final accounts of the executor does not operate as a judicial construction of the will so as to preclude the executor from raising the question of construction in this court.

2. A will directed the executors to convert the entire estate for the purpose of paying legacies and carrying out its provisions. Payment of the legacies was postponed until two years after testator's death, the income during that period to be added to the principal. The executors were expressly authorized to reinvest the proceeds of the sale of the estate, in their discretion. The residue of the estate remaining after the payment of certain legacies was to be divided into five equal parts. which were to be turned over and paid to a trustee.—*Held*, that the investments authorized to be made by the executors pending distribution, as well as the securities which the testator owned at his death, could be divided by them as comprising part of the residue and turned over to the trustee as residuary legatee; and that the division and payment to the trustee were to be made as soon as practicable, but not until after two years from testator's death.

3. The executors did not commit a breach of trust by investing in New York City mortgages, and were not bound, at their own expense, on turn-

ing the estate over to the trustee, to convert the mortgages into cash, or be responsible for the deficiency; but the trustee claiming that the securities are insufficient, the court should, before directing the investments to be turned over, inquire into and determine their sufficiency as investments of the trust funds.

Heard on bill, answer and cross-bill, replication and proofs.

Complainants are executors of the will of Oliver S. Carter, a resident of the county of Essex, who died June 28th, 1901. They settled their final accounts as executors in the orphans court of Essex county and on October 17th, 1903, a decree was made by this court on the final settlement and allowance of the account, by which it was decreed that there was a balance in their hands of $2,151,966.22, to be disposed of according to law, from which it was further ordered that sums amounting in the aggregate to $94,934.20 be deducted for the commissions and expenses of administration. It did not appear by the account or decree that the balance remaining in their hands, or any portion of it, was invested in any securities. The entire real and personal estate of the testator had been converted into cash by the executors and part of the proceeds thereof, to the extent of $1,643,500, was in fact invested by the executors themselves upon bonds secured by mortgages on real estate in the city of New York. By the ninth clause of the will the executors, after reserving sufficient to pay legacies previously bequeathed (amounting in the aggregate to $213,000) and also reserving one-sixth of the residue for payment to testator's widow (less $35,000 directed to be previously paid), were directed to divide the residue of testator's estate into five equal parts, in trust, for each of his four children, and the children of a deceased daughter, and as soon as practicable after his decease to turn over and pay to the Mercantile Trust Company, of the city of New York, the said five equal parts of his residuary estate for the purposes of this trust. These trusts were that the five equal parcels were to be allotted and held by the trust company for the benefit of his said children and the children of his deceased daughter, keeping the parcels separate and apart and paying the income to these beneficiaries during their lives. To each of

testator's daughters and to the children of his deceased daughter the testator also bequeathed, directly, the income from one-fifth part of the residuary estate so set apart and invested for them, respectively, and upon the death of any of his daughters or his grandchildren gave the *corpus* of the share so set apart to the respective heirs of the daughter or grandchild. This clause expressly authorized the trust company "to invest the said moneys representing the said several five parcels of my residuary estate in safe income-bearing securities under the provisions of the statute of the State of New York regulating the investment of trust moneys."

The executors have paid over to the trust company the cash in their hands, amounting to $319,483.20, and before the commencement of the suit offered to turn over, and now offer by their bill to turn over, the bonds and mortgages in their hands, upon receiving proper releases and refunding bonds. The trust company declined to receive these bonds and mortgages as part of the residuary estate, alleging that in its judgment they are not such investments as are authorized by the statutes of New York regulating the investment of trust moneys. The investments are not, as the trust company insists, made upon property of a class which is in its judgment suitable for the investment of trust funds, and the investment made is also, in its judgment, in excess of sixty per cent. of the fair value of the property mortgaged. It claims that this is the percentage limit allowed by the New York statutes. It therefore declines to assume the responsibility of accepting on its own judgment these mortgages as part of the residuary estate, or to receive them unless so directed by this court. In its answer the want of power of the executors to make the investments in New York mortgages is not expressly set up as a reason for not receiving the mortgages, but the cross-bill filed with the answer asks that payment to the trust company of the residuary estate under the will may be decreed, and also for a determination whether the investments of the executors were lawfully made and whether it ought to accept them as proper investments of trust funds. Upon the hearing it was insisted that the executors had no power to make these investments, and must be directed to pay

over in cash the balance in their hands as settled by the orphans court. If a conversion of the mortgages into cash by the executors, by sale or otherwise, is required, an expense estimated at from $30,000 to $35,000 will be incurred. No loss, however, has yet occurred in any of the investments, nor has there been any default in payment of interest. Considerable evidence has been taken as to the value of the properties mortgaged, and the expert valuers differ materially as to the valuations. Complainants claim that under the New York statutes the percentage limited for trust investments by the trust company is two-thirds of the value of the property, and not sixty per cent., as claimed by defendants. The loans are in all cases over sixty per cent. of the average valuation now fixed by complainants' own appraisers. In one or two cases the loan is for fully two-thirds of this average valuation, and the average proportion of loan to value is sixty-five per cent. According to the valuation of defendants' appraiser—a thoroughly experienced and competent man—the loans in all cases exceed sixty-three per cent. of the valuations of the property, and average nearly seventy-five per cent. In his judgment, reached after an examination of all the properties, the properties are of a class not appropriate for the investment of trust funds at over fifty per cent. of their value. They are in the main apartment houses, which are not strictly fireproof, built by contractors and owners for sale, and unless well cared for and managed deteriorate rapidly, and which require constant repairs after the first two or three years. The complainants, on the other hand, claim that the investments are proper investments for trust funds; that under the special provisions of this will these investments by them of the money collected from the conversions of the assets were authorized, and that they may be turned over to the residuary legatee, in lieu of cash, as payment or satisfaction of so much of the residuary legacy.

The will, so far as material to the present inquiry, was substantially as follows: After directing payment of his debts, funeral and testamentary expenses, as soon after his decease as practicable, the testator directs the payment of $500 to a cemetery association, and then bequeathed by the third and

fourth clauses legacies, amounting in the aggregate to $18,500, to his nephews and brother and niece, all severally payable "at the expiration of two years from my decease." By the fifth clause he bequeathed to his wife $20,000, payable in monthly installments of $2,500 each, commencing at the expiration of thirty days after his death. He then bequeathed to his wife absolutely and in fee (in addition to his household goods) one equal sixth part of all the residue of his real and personal estate, and directed that this portion of his residuary estate should be allotted and paid to her in monthly payments of $1,000 each, commencing one month after the $20,000 had been paid, "and the residue or balance of the said one-sixth share is to be paid to her at the expiration of two years after my decease, if practicable, and deemed best by my executors." The will then proceeds:

"*Sixth.* I order and direct my executors to sell and convert into money the whole of my real and personal estate not hereinbefore specially bequeathed [the furniture, horses, &c.] for the purposes of paying to my said wife the above-mentioned bequests, and for the purpose of paying the various legatees hereinbefore named, and of carrying out the further provisions of this my last will and testament; *provided, however,* that my said executors and the trustees hereinafter named may permit any portion of my personal estate to remain invested in any of the stocks or other securities in which the same may be invested at the time of my death, and shall not be chargeable with any loss by reason thereof."

By the seventh clause a legacy of $10,000 was then given to a grandson, payable out of the residue of the estate, upon his attaining twenty-five years of age, or at the expiration of two years from the date of testator's death—whichever event should first happen.

By the eighth clause he gave to each of his four daughters $30,000, also payable at the expiration of two years after his decease, with the provision that if the husband of Mrs. Pelton, one of the daughters, should be living at his decease, her legacy should be invested by the executors in safe income-bearing securities for the payment of the income to her during her husband's life, and then to pay her the principal. By this same eighth clause testator gave equally to the two children of his deceased daughter the income of $30,000, which amount he directed his executors to pay as soon as practicable after his

decease to the Mercantile Trust Company, in *trust,* to pay the income to the children or their guardian, until they reached twenty-five years of age, respectively, and then to pay the principal to them, respectively, with limitations over in case of the death of either or both before attaining this age. This clause specially constituted the trust company a trustee for the purpose of carrying out the provisions of this paragraph of his will, and authorized and empowered the trustee to invest the $30,000 in safe income-bearing securities, under the provisions of the statutes of the State of New York regulating the investment of trust moneys.

The ninth clause, which is the residuary clause, together with the tenth, which fixed the time of payment of the legacies at two years from his death, with a provision for accumulation of income by the executors, and the twelfth, which authorizes the sale of real and personal estate by the executors and the reinvestment of the proceeds, are the clauses mainly relied on by the complainants as authority for the investments, and are as follows:

"*Ninth.* After reserving sufficient to pay the legacies hereinbefore made and carrying out the foregoing provisions of this my last will and testament, I order and direct my said executors to divide the residue of my estate, of whatsoever name or nature, into five equal parts; in trust, nevertheless, for each of my said children, Kate Louise Macy, Isabel Stanley Phelps, Alice Griffing Ballard and Lucy Estelle Pelton, and a one-fifth equal parcel in trust for the children of my deceased daughter, Lizzie Coley Bacot.

"I direct that my said executors, as soon as practicable after my decease, shall turn over and pay to the Mercantile Trust Company, doing business in the city of New York, the said five equal parts of my residuary estate for the purposes of this trust, to wit:

"The said five equal parcels shall be allotted and held by the said The Mercantile Trust Company for the benefit of my said children, Kate Louise Macy, Isabel Stanley Phelps, Alice Griffing Ballard and Lucy Estelle Pelton, and as to the fifth parcel, for the benefit of the children of my deceased daughter, Lizzie Coley Bacot.

"And I make and constitute the Mercantile Trust Company a trustee for the purpose of carrying out the provisions of this paragraph of my last will and testament, and I do authorize and empower the said trustee to invest the said moneys, representing the said several five parcels of my residuary estate, in safe income-bearing securities, under the provisions of the statutes of the State of New York regulating the investment of *trust moneys*, and to pay the income thereof at least annually, and oftener if practicable, to my said several daughters and the children of my

deceased daughter Lizzie Coley Bacot, it being intended that the said five equal parcels shall be kept separate and apart, and the income thereof shall be paid to the beneficiary or beneficiaries entitled thereto during the lifetime of such beneficiaries, and I do give and bequeath to each of my said daughters, Kate Louise Macy, Isabel Stanley Phelps, Alice Griffing Ballard and Lucy Estelle Pelton, and the children of the said Lizzie Coley Bacot, the income derivable or accruing from the one-fifth parcel of my residuary estate so set apart and invested for them, respectively; and upon the death of any of my said daughters or my said grandchildren named in this paragraph, I give and bequeath the *corpus* of the respective share or portion of my said estate so set apart and invested to the respective heirs of such daughter or grandchild *per stirpes.*

"*Tenth.* I hereby direct that none of my estate hereby devised, with the exception of the moneys heretofore directed to be earlier paid to my wife, shall be paid over to the persons entitled thereto until the expiration of two years from the date of my death; and my executors shall add all interest, dividends and income that shall accrue up to that period to the capital, and it shall be and form part of my residuary estate.

"*Twelfth.* I hereby authorize and empower my executors hereinafter named to sell and convey all or any part of the real and personal estate of which I may die seized or possessed at public or private sale, and at such time or times, in such manner and upon such terms and conditions as they, in their discretion, shall deem most advantageous for my estate; and for that purpose to make, execute and deliver all proper deeds therefor, and to reinvest the proceeds of the same, in their discretion. Until my executors sell my real estate they shall have power to collect all the rents, issues and profits thereof, and to rent, lease and manage the same as they may deem best for the interest of my estate."

The executors converted the entire estate, and before the expiration of the two years had invested $1,496,000 in eighteen New York mortgages, varying in amount from $25,000 to $200,000. After the two years, and from August 9th to September 15th, 1903, they invested $157,500 in four similar mortgages, varying in amount from $15,000 to $66,500. Whether this latter sum was the proceeds of conversions made after the two years does not appear.

*Mr. John R. Hardin,* for the complainants.

*Mr. Charles L. Corbin,* for the defendant Mercantile Trust Company.

*Mr. John J. Hoppin* and *Mr. Thomas L. Raymond,* for the infant defendants.

16

EMERY, V. C.

At the hearing of the cause three points were raised—*first*, whether the trust company as residuary legatee under the will could be obliged, against its consent, to accept any securities for investments made by the executors, instead of cash, in payment or satisfaction of the legacy; and if so, then, *second*, whether the mortgages were investments authorized to be made by the executors; and *third*, whether, if so authorized, they were sufficient securities for the loans made on them.

Being satisfied that the objection to the sufficiency of the securities was made in good faith, argument upon the first two points was directed, decision upon the question of the sufficiency of the mortgages being reserved for further hearing and order. On the *first* point—the right of the residuary legatee to receive cash instead of securities—counsel for the trust company raise the preliminary question whether the right to turn over anything except cash is not concluded against the executors by the decree of the orphans court on the final accounting finding a balance in money due from them. Under the statute, *Orphans Court Revision, 1898*, § *127; P. L. of 1898, p. 761*, this decree is conclusive upon all parties. By this decree a balance of $2,151,966.22 was decreed to be in complainants' hands, to be disposed of according to law, after deducting the expenses of administration. The fifth rule of the orphans court requires executors who hold funds by virtue of the direction of a will to state the securities in which the estate is invested, and if this statement of the securities in dispute has been annexed to the final account, the question of the right of the executors to make them may, in some cases, be regularly adjudicated by the orphans court on an exception to their allowance. In *Tucker v. Tucker, 33 N. J. Eq. (6 Stew.) 235 (Runyon, Ordinary, 1880)*, an investment of estate funds in city bonds and bank stock, made by an executor on his own judgment and without authority of a competent court, was disallowed on the settlement of the final account. But in this case no construction of the powers of investment under the will was involved, and where the right to turn over or appropriate securities for the payment

of a legacy depends upon the construction of a will, the juris-
diction of the orphans court to decide the question must depend
on the act of 1872 (*P. L. 1872 p. 47*), incorporated in the gen-
eral statutes (*p. 2391*) as section 151 of the Orphans Court act,
and now section 173 of the Orphans Court act (*Revision of
1898; P. L. of 1898 p. 781*), authorizing distribution in accord-
ance with the will. This power of the orphans court to construe
wills for the purpose of distribution was affirmed by Chancellor
Runyon, in *Hill* v. *Bloom, 41 N. J. Eq. (14 Stew.) 276 (1886)*,
but no question as to the constitutionality of the statute appears
to have been raised, and subsequent decisions hold this question
to be still an open one. *Adams* v. *Adams, 46 N. J. Eq. (1 Dick.)
298 (Court of Errors and Appeals, 1889)*; *Stevens* v. *Dewey,
55 N. J. Eq. (10 Dick.) 232 (Vice-Chancellor Pitney, 1897)*.
These later cases further hold that a decree settling the balance
due on final accounts, on the usual notice, is not an exercise of
this jurisdiction to construe the will on application for distribu-
tion, but that this question must be settled upon a proceeding
for that purpose, with actual notice to all parties interested.
The decree of the orphans court settling the balance in the
executors' hands did not therefore decide that this balance, under
the will, must be paid in cash, and the will must now be con-
strued on this point. In the absence of any directions in a
will as to the time or manner of the payment of the residuary
legacies, the general rule is that the residuary legatee has a
right to insist that before the end of the first year after testator's
death the executors shall, if possible, convert all the assets into
money, pay the debts, funeral and testamentary expenses, and
hand over the clear residue to the residuary legatee. *2 Wms.
Ex. *1454.* The legatee, residuary or other, may, however, in
satisfaction of his legacy, consent to accept securities from the
executors, whether held by them for conversion under the gen-
eral rule for settlement or under special directions of the will.
Such acceptance by the legatee is considered as practically a
conversion and sale by the executor and a distribution of the pro-
ceeds by the executor. *In re Beverly, 1 Ch. Cas. 681, 684 (1901)*.
These general rules as to the right of the residuary legatee to
require conversion of securities by the executors and payment

in cash are controlled, however, by the directions of the will. In this case they have been so modified, and the question is whether, upon a construction of the whole will, it was intended by the testator that their own investments of the proceeds of conversion of the estate might be turned over by the executors to the residuary legatee as part of the residue, if the executors did not convert them for distribution, or whether the executors were required to reconvert for distribution. The powers expressly given to the executors for the conversion and investment of the estate pending distribution are here very large. By the fourth clause they are directed to convert the entire estate for the purpose of paying the legacies and carrying out the provisions of his will; by the tenth clause they are directed to postpone payment of any of his estate (except the monthly payments to his wife) until two years after his death, and to add the income up to that period to the capital of the residue. A direction for accumulation of interest has been held to imply a direction to invest for that purpose. *Fowler* v. *Colt,* 25 *N. J. Eq.* (*10 C. E. Gr.*) *202, 206* (*Chancellor Runyon, 1874*). But the twelfth clause, after authorizing the conversion and sale of his entire estate, or any part thereof, real and personal, to be in such manner as the executors deem advantageous, gives them express authority to reinvest the proceeds of sale in their discretion. Being thus directed or authorized to convert the entire estate, to invest the proceeds of sale at their discretion, and to accumulate the income for two years, they are directed by the ninth clause, after reserving sufficient to pay the legacies and the one-sixth of the residue given to the wife, to divide the residue, "of whatsoever name or nature, into five equal parts," and "as soon as practicable after my decease to turn over and pay the said five equal parts of my residuary estate to the Mercantile Trust Company," in trust. The intention that the executors might divide securities as well as money expressly appears in the fourth clause, which authorizes the retention and division of the investments made by the testator, and the words "turn over," which certainly include these investments, also naturally apply to and would include as well authorized investments made by the executors. The authority to divide securities and pass them over to the trustee, given by

these words "turn over," although specially applicable to the securities held by the testator, cannot be confined to them, in the absence of any indication that the testator so restricted their application. I think it was the intention of the testator, gathered from the whole will, that the investments authorized to be made by the executors, pending distribution, might be divided by them as comprising part of the residue and turned over to the residuary legatee. The trust company contend that the legacy of the residue to them was not postponed for two years, but that it was payable as soon as practicable, under the ninth clause; that the conversion of the estate made immediate payment practicable, and therefore, as to them, no reinvestment by the executors was authorized. But the tenth clause, directing that none of the testator's estate (except the gifts which are directed to be earlier paid to his wife) shall be paid to the persons entitled thereto until after the expiration of two years from the date of his death, apparently applies to all payments of the estate, including the payments to the trust company as residuary legatee. Taken in connection with the other provision of this clause that the executors (not the trust company) are to receive the income in the meantime for the accumulation of capital for the residuary estate, and with the further fact that by the fifth clause the balance of the wife's share (one-sixth) of the residue is not in any event payable until after two years, and then only if practicable, I think the tenth clause must be held to qualify the previous independent direction for payment to the trust company as soon as practicable, and that construing all the provisions together the direction is to divide and pay over the residue as soon as practicable after testator's death, but not until after two years, and that in the meantime the executors must accumulate the income to form part of the residue to be divided at the end of two years, if practicable, between the widow and the trust company. The executors were further expressly authorized by the twelfth clause to sell and convert all testator's estate and to invest the proceeds at their discretion, and it is not possible, I think, to reconcile these express powers of investment of proceeds of sale, in connection with the direction of the ninth clause, to accumulate the income for two years as part of the capital of

the residuary estate, with the contention now made by the trust company that the deferred payments in the tenth clause referred only to the legatees beneficially interested, and that the payments to it as residuary legatee under the ninth clause were to be made as soon as practicable after testator's decease, and before the expiration of the two years, and were not to be held at all for investment by the executors. Upon the first point I conclude, therefore, that on the scope of the whole will the executors, for the purposes of conversion and accumulation, were to hold the entire estate for at least two years, and that they were then to divide the residue if practicable. They also had power to invest the proceeds of all the estate for accumulation of capital during that time, and in dividing the residue they had the right to divide and turn over, in satisfaction of the residuary legacy, authorized investments made within the two years, and were not required to convert all their reinvestments into cash for the purposes of division.

The *second* question is whether the investments in New York City mortgages were investments of an authorized character. The investments being first mortgages on real estate (and for present purposes being considered as safe and sufficient security for trust investments), the question is whether the investment is illegal and unauthorized merely because the lands are not situated in this state. No statute or decision of our courts has yet established this hard and fast rule. In *McCullough* v. *McCullough, 44 N. J. Eq. (17 Stew.) 313 (Chancellor McGill, 1888)*, an application was made by trustees for instructions as to investing on lands in Minnesota. Such investment was disapproved, but the disapproval by the court was based on consideration of all the circumstances of the case and of the security of all the parties interested. It was not refused because it was in itself and in any event illegal or unauthorized. No later or other decision in New Jersey has been referred to. *Ormiston* v. *Olcott, 84 N. Y. 339 (1881)*, which was referred to with approval in the *McCullough Case* as to the objections to such investments, expressly declines to hold that such investments are necessarily illegal (at *p. 343*), and goes no further than to declare the general rule to be that investments beyond the juris-

diction of the court should not be sustained unless in rare and exceptional cases, and under very unusual and peculiar circumstances. This rule, it is further said, should not be made arbitrary and inflexible, and so rigid as to admit of no possible exceptions, for it is merely an outgrowth or consequence of the broader rule that a trustee, in making investments, is to employ such diligence and such prudence as in general prudent men of discretion and intelligence in such matters employ in their own like affairs. The statute relating to investments by executors and trustees expressly recognizes the general rule that loans on real estate by trustees should be such as a reasonable and prudent investor, dealing with his own funds, under the like circumstances, would require. *P. L. of 1902 ch. 240 p. 700.* There are exceptional circumstances in this case, which should make the court hesitate to conclude that mortgages on lands in New York City are unauthorized investments. The estate was very large. In the fair discretion of the executors some of the investments must probably be large, and unless mortgages were excluded altogether such loans were not readily procurable except in a large city. The testator (a New York banker), for a long time president of one of the leading banks, contemplated New York investments of his property as one of the methods of permanent investment, and expressly authorized the permanent trustee to make them. It cannot be said, therefore, that New York City mortgages were not contemplated for some portion of the permanent investment. The executors made these investments for the purpose of turning them over to the New York trustee, to hold as part of the permanent investment, and while the executors were not, as was the trustee, specially authorized by the will to make them, and therefore cannot take any addition to their powers by the powers given to a trustee specially selected and authorized to make New York investments, yet this fact that the trustee was authorized to hold such securities, if they were sufficient, and the further fact that the character of the investment to be made by the executors pending division was expressly left to their discretion, are entitled to very great weight in determining the legality of the investment. I cannot say, under these exceptional circumstances, that the executors com-

mitted a breach of trust by investing at all in New York City mortgages, and that they must at their own charges convert the mortgages into cash or be responsible for the deficiency. Where the security taken is unauthorized, the trustee incurs this liability to make good the fund as a necessary consequence. *Tucker* v. *Tucker, supra; In re Salmon, 42 Ch. Div. 351 (C. A., 1889), Lord Justice Cotton* (at *p. 367*). But where the security, although authorized, is insufficient, the situation is different, and the rights and liabilities of the executors and the residuary legatee in trust depend on additional considerations. The executors now hold the securities to turn over for a permanent trust fund for the benefit of life tenants and remaindermen, some of whom are infants or not yet in being, and apply to the court for directions as to turning them over. The trustee who is to receive the securities for this purpose alleges that the securities, even if authorized, are not sufficient, and in view of this objection the court should not direct that the investments be turned over to the trustee without further inquiry, but should inquire into and determine their sufficiency as investments of the trust funds. The question of sufficiency is a very important one, for the division of the residue into five equal parts, turning over to each part its proportion of mortgages, is to be made by the executors, or, they having failed to make the division, by the court. This division is the final appropriation for each share, as the trust company, under the will, only allots the shares after receipt and keeps them separate. The loss on any mortgage turned over in part payment of a share will therefore be a loss on this share alone. The cause is not ready for final disposition in this respect and it will therefore stand over for further hearing and directions after declaration that investments made before the expiration of the two years in New York City mortgages were not of an unauthorized character. I will also hear counsel as to the decree to be made in reference to investments made after the expiration of the two years, as this point was not specially referred to either in the arguments or briefs.