The will of Rachel Shaw was admitted to probate in Hudson county July 23d 1928. The testatrix gave her entire estate to Mechanics Trust Company in trust, to invest two-thirds of the net estate on first bond and mortgage and to pay the income therefrom to her grandson, Frank L. Brown, until he arrives at the age of forty-five and then to pay him the corpus and if he should die before attaining that age, the corpus to go elsewhere as directed by the will; to invest the remaining one-third on bond and first mortgage and to pay the income therefrom to her son, Edwin B. Brown, for life, and after his death to his daughters, Eleanor R. Covert and Hester R. Brown (now Wolf), equally, until the younger should arrive at the age of thirty-five and then to divide the corpus equally between them. The Mechanics Trust Company was appointed executor and qualified. Edwin B. Brown died September 9th, 1929, his two daughters surviving him and Mrs. Wolf, the younger, became thirty-five September 30th, 1935.
The trust company failed to invest any of the estate in bond and first mortgage and used estate funds to purchase from itself, January 29th, 1930, two mortgage participation certificates for $3,000 each, and June 30th, 1930, a like certificate for $1,500. Those certificates were issued by Mechanics Trust Company and certify that the estate of Rachel Shaw is entitled to participate to the extent of the respective amounts named in the certificates, in loans aggregating $100,000 secured by first mortgages given to the trust company, which mortgages have been set aside in trust with a named bank for the benefit of participants in certificates issued against them. About February 1st, 1933, the commissioner of banking and insurance, under provisions of emergency legislation, ordered the trust company to make no further payments on its participation certificates in excess of payments actually received and the trust company was placed under restrictions of the Altman act July 2d 1934, and continued to operate under that act until June 17th, 1936, when said commissioner took possession of it for the purpose of liquidation. *Page 538 
The trust company filed its first and final account as executor, which was allowed by decree of the Hudson orphans court June 27th, 1930. Its next account, as trustee, was allowed by decree of December 28th, 1934, and its third account, showing a balance of principal on hand of $7,197.93 was allowed by decree of September 27th, 1935, which ordered that the trustee may pay and deliver to Mrs. Covert and Mrs. Wolf one-third of the estate in accordance with the provisions of said will, after deducting commissions and counsel fees allowed. On all three accounts notice of settlement was given to Frank L. Brown, Mrs. Covert and Mrs. Wolf and each account showed a portion of the estate invested in participation certificates, also items of receipt of interest and payments thereon in reduction of principal. The last account shows that the balance of principal in the hands of the trustee was invested in the aforesaid three participation certificates, reduced by payments thereon to a value of $5,063; that $2,076.32 was invested in obligations of the federal government and that the remainder was in cash.
On the allowance of the third account the trustee was willing to distribute to Mrs. Covert and Mrs. Wolf one-third of thecorpus of the estate in kind, but they refused to accept the participation certificates either by assignment or by new certificates issued to them and in or about August, 1936, they petitioned the orphans court for an order directing payment to them in cash. About the same time that court entered an order discharging the trust company from its duties as trustee, appointing Samuel D. Lewin as trustee in its place and directing the trust company to deliver the balance in its hands to Lewin. On his petition the orphans court made him a party to the proceedings brought by Mrs. Covert and Mrs. Wolf and permitted him to intervene therein. The proceedings in the orphans court were not for the purpose of opening its decrees and surcharging the trustee, but were demand for payment in cash of the amount the trust company's last account showed to be due the beneficiaries. The matter came on for hearing before the orphans court and by its decree entered April 21st, 1937, reciting that the court was of the *Page 539 
opinion that the petitioners were entitled to be paid in cash their shares of the balance with which the trust company had charged itself, the trust company and the commissioner of banking and insurance were ordered to pay Mrs. Covert and Mrs. Wolf $1,894.24 and to pay to Lewin, substituted trustee, $5,105.72 and a counsel fee of $500 to the proctor for Mrs. Covert and Mrs. Wolf. The trust company and the commissioner appeal from the entire decree.
The trustee was derelict in its duty in that:
(a) It failed to set up two separate trusts as directed by the will, one consisting of two-thirds of the net estate for the benefit of Frank L. Brown and for those who may be entitled to stand in his place in the event of his death before forty-five and the other consisting of the remaining one-third for the benefit of Mrs. Covert and Mrs. Wolf. Had the trustee followed such direction, it might be found in this case that if loss had to be suffered on investments, it should not be borne by both trusts. Investments in participation certificates for one trust might not have suffered any loss, or not the same proportion of loss as investments in the other trust and when the trustee asserts that the beneficiaries are estopped from objecting to its investments, the acts of estoppel charged against beneficiaries under one trust could not affect beneficiaries under the other. In the situation created by the trustee, if any loss must be borne by the beneficiaries, all must share it proportionately.
(b) The will directs that funds of both trusts shall be invested in bond and first mortgage. The act of 1898 as amended (Comp. Stat. p. 3864 § 137) and the act of 1899 (Comp. Stat.p. 2271 §§ 35, 36), as amended and supplemented, both specify securities in which trust funds may be invested and each directs that the act shall not apply where the testator's will gives special direction as to the manner of investment. Government securities would be legal investments under both acts, but for the proviso noted, and so would participation certificates underP.L. 1927 ch. 81, which amends P.L. 1920 ch. 192 (a supplement to the act of 1899). The prohibition of the acts of 1898 and 1899 against investment *Page 540 
contrary to the direction of a will, is still in force and therefore the investments made by the trustee were illegal and subject it to liability for any loss which may be sustained thereon. Brewster v. Demarest, 48 N.J. Eq. 559; Ross v.Savings Investment and Trust Co., 120 N.J. Eq. 87; Gates v.Plainfield Trust Co., 121 N.J. Eq. 460; affirmed,122 N.J. Eq. 366.
(c) In making investment in participation certificates the trustee was dealing with itself, an act the law does not countenance. As a bank it loaned depositors funds on mortgages taken in its own name and as trustee it used estate's funds to purchase from itself, at a profit, interests in those mortgages. The certificates conferred on the estate of Rachel Shaw merely the right to participate in loans secured by mortgages, but no right in the mortgages themselves other than rights of a holder of collateral securities in case of default on the certificates. The trust company (mortgagee) retained power to collect principal and interest on the mortgages, to satisfy, withdraw and substitute mortgages and to decide whether and when to take action upon any and all defaults by the mortgagors. It guaranteed payment of principal and interest on the certificates, which were made non-negotiable, but assignable with the trust company's consent. So far as holders of the certificates were concerned, the trust company was the principal debtor and the certificates here in question were, in effect, the promise of the trust company as a corporation to pay to itself as trustee. The investments so made are voidable at the option of the beneficiaries. Gates v. Plainfield Trust Co., supra;McAllister v. McAllister, 120 N.J. Eq. 407; affirmed, 121 N.J. Eq. 264,265; In re Bender, 122 N.J. Eq. 192. The trustee must have known sometime prior to February 1st, 1933, when the commissioner of banking and insurance limited payments on account of its participation certificates, that its financial condition was precarious, yet it continued to hold the certificates in question and it now has seventy per cent. of the estate invested therein.
Notwithstanding its mismanagement of the estate, the trustee contends that the beneficiaries are estopped from complaining thereof and must accept such illegal investments as *Page 541 
part of their share of the estate. Such contention is based, first, on the fact that each of the three accounts filed by the trustee showed investment in participation certificates and that the last one also showed the government securities; that notice, as required by statute and rule of court, of the filing of each was given to the beneficiaries, who made no objection thereto and that the accounts were allowed by decrees of the orphans court. The trustee further contends that the beneficiaries had other and direct notice of the investments and by their silence assented thereto.
The Orphans Court act (Comp. Stat. p. 3809) in section 125, provides that the court shall examine accounts of trustees and the vouchers and receipts for payments and disbursements claimed therein and if found to be correct in all respects and no exceptions being made to the surrogate's report of audit, the court shall decree allowance, and section 127 provides that such decrees shall be conclusive on all parties and shall discharge the trustee from all demands of legatees "beyond the amount of such settlement," except in cases of fraud or mistake. There is no statute requiring a trustee to annex to his account a list of securities in which the balance of his estate is invested; such requirement is by rule of court. In practice the surrogate merely checks the items of disbursement against vouchers filed with the account and if no exceptions are filed, the court approves the account on the surrogate's report and does not examine the list of securities to see whether they consist of legal investments, or of securities as directed by the will. The accounts in question show that the trustee charged itself in each case with a definite balance in hand and that such balance was invested in stated securities at a value fixed by the trustee. If the securities were not worth such value (the value of participation certificates being particularly within the trustee's knowledge) the statement was calculated to mislead the court and the beneficiaries and would not estop the latter from believing what the trustee stated, had they examined the accounts.
The only direct notice of investment in participation certificates given by the trustee to Frank L. Brown, Mrs. Covert and Mrs. Wolf was by mailing to them, August 1st, 1930, a *Page 542 
statement of receipts and disbursements which showed a balance of $8,300.78 in hand, invested in securities listed, which included the first two certificates for $3,000 each, carried at full cost price. It did not show the $1,500 certificate or other investments now held by the trustee. No other statement or communication was made by the trustee (except notice of settlement of accounts) to Mr. Brown or Mrs. Covert, but in reply to a letter written to the trustee by Mrs. Wolf, the trustee wrote her August 26th, 1932, that the assets of the estate were comprised of $7,500 first mortgage participation certificates, and enclosed a copy of the will. That she did not understand what the certificates were, is demonstrated by her reply to the trustee, dated September 6th, 1932, asking who issued them and, if the mortgagor should default, would the mortgagee be protected by the company issuing them. To that letter the trustee replied that the certificates were issued by it, with its guarantee of payment of principal and interest, participating in a series of mortgages; that default in any mortgage would not affect the certificates because the trustee assumed liability and guaranteed their payment. Yet five months later the commissioner of banking and insurance restricted the trustee on payments on its certificates. Under date of September 24th, 1935, Mrs. Covert and Mrs. Wolf signed a letter, addressed to the trustee, stating their consent to its second account (being the third one filed) as to costs and charges thereof and releasing the trustee from all liability in making distribution to them prior to the allowance of the pending account. The circumstances under which they signed that letter are not shown. It was prepared by the trustee and the women's signatures were obtained thereto three days before the account came up for allowance and long after liquidating dividends on the certificates had ceased. It is to be noted that the letter contains no approval of investments and it is certain that had the trustee acquainted the beneficiaries with the condition in which the estate investments stood, they would not have signed it.
To estop a cestui que trust on the ground of implied acquiescence, from complaining against a breach of trust by *Page 543 
his trustee, it must appear by full and satisfactory proof that the cestui knew all the facts, understood his legal rights and acted deliberately in not objecting to an investment he knew, or should have known, he had the right to object to. He cannot be held to have recognized the validity of a particular investment unless the question of its validity appears to have been brought to his attention. White v. Sherman, 168 Ill. 589; McAllister
v. McAllister, supra. No notice of filing of accounts, and in fact no notice of any kind, was given to those parties in interest (now represented by the substituted trustee) who will be entitled to two-thirds of the estate in the event of Mr. Brown's death before reaching the age of forty-five.
Prior to the allowance of the third account, the three beneficiaries had no notice or explanation, other than hereinabove stated, of the investments made by the trustee. Mrs. Wolf was the only one who received direct information as to what those investments were and notice to her is not binding on the others. The record does not disclose what, if any, knowledge she had of business affairs and after she had made inquiry concerning the certificates (which it appears she did not understand), the trustee's reply was sufficient to allay any fear or doubt she may have had concerning them. All beneficiaries had the right to assume that the trustee was efficient and was performing its duties pursuant to the will and according to law and there is nothing in the record to indicate that they realized that the trustee had deviated from the investment provision of the will, or that they understood the possible effect of a deviation. Its trust officer, who managed the estate and admitted responsibility for the investments, testified that the beneficiaries reposed faith in the trustee, and did not bother about its administration of the estate; that he never discussed investments with the beneficiaries until after the third account had been allowed and then he told Mrs. Covert and Mrs. Wolf not to worry about the estate and that they would receive their share in cash.
I cannot find that Mrs. Covert, Mrs. Wolf or Mr. Brown understood that the trustee had invested estate funds illegally, *Page 544 
or that they were guilty of any laches which estop them from refusing to accept their shares of the estate in kind and the decree of the orphans court directing the trustee to make distribution of the estate in cash, is affirmed. In re Craven,43 N.J. Eq. 416; Macy v. Mercantile Trust Co., 68 N.J. Eq. 235.
There is no evidence that the investments held by the trustee are not worth their cost price. If they are not, the trustee must suffer any loss sustained. It would be particularly inequitable to require the substituted trustee, representing parties who have had no notice of the trustee's acts, to accept two-thirds of the estate in securities not authorized by the will and which may have a depreciated value.
This appeal is also from so much of the orphans court decree as allows a counsel fee of $500 to the proctor for Mrs. Covert and Mrs. Wolf, on the ground that the amount is excessive and should be reduced. The record shows that although appearance at the hearing in the orphans court was entered by proctor for the substituted trustee, that proctor took no active part in the hearing by producing, examining or cross-examining witnesses and left the trial of the case to the proctor for Mrs. Covert and Mrs. Wolf. The result of the trial was not only an award to Mrs. Covert and Mrs. Wolf but also an award to the substituted trustee. While the fund out of which the allowance must be paid is held by the commissioner of banking and insurance as trustee for all creditors of the trust company, counsel fees were properly allowed because the commissioner and the trustee defended against the latter's conduct and delinquency and put the beneficiaries to the trouble, delay and expense of sustaining their claim that the trustee's investments were improper. In the absence of any information, other than the record itself on which an opinion can be formed as to the quantity and quality of the work performed by the proctor to whom the allowance was made, I must assume that the orphans court had knowledge of the nature and character of the legal services rendered in the entire proceedings and made such allowance as was proper under all the circumstances and in the exercise of sound discretion. *Page 545