The complainant, Mollie W.B. Cox, entered into a trust agreement with the defendant, Camden Safe Deposit and Trust Company, dated May 26th, 1930, and pursuant to the terms of such agreement she delivered to defendant $3,000 in cash, in trust, to and for the following uses and purposes as set forth in said agreement:
"To Have and to Hold, and to invest, reinvest and keep invested the same in such securities as in the judgment of the said trustee shall seem to be advisable, whether the same be those securities which are authorized for the investment of trust funds by the laws of the State of New Jersey, or otherwise, and after deducting all taxes, charges, expenses and commission incident thereto, to pay the net income derived therefrom to me the said Mollie W.B. Cox for and during the term of my natural life or until such time as this trust shall be revoked by me as hereinafter provided, and at and after my death, if the power of revocation which I have hereinafter reserved to myself has not been exercised by me in my lifetime, the said Trustee shall pay over, transfer and deliver the principal of the said trust estate in its hands at that time, together with all income therefrom to the Executor of my Estate or to my Administrator.
"It is my intention and the said trust estate is created subject to the express condition and reservation that I shall have the right and privilege to alter or amend any or all of the terms and provisions of the foregoing Deed of Trust, or to revoke, annul and make absolutely void the same or any part thereof, or to withdraw any part of the principal of the said trust estate from time to time upon written notification to such effect which shall be duly signed by me and delivered to said Trustee.
"It is also understood and agreed to by me that any certificate or certificates representing a participation or any interest in any mortgage investment made by the said Trustee, may at the option of the said Trustee be retained by it and the equivalent in cash paid to me or to my Executor or Administrator upon the revocation or termination of the said trust estate."
The agreement further provided that the defendant trustee should be entitled to receive a commission of five per cent. of the income, to be deducted therefrom when and as collected, and a further fee of one-tenth per cent. with a minimum of $5, upon the termination or revocation of said trust estate.
The defendant, under authority of a resolution passed by its board of directors at a meeting held July 9th, 1925, *Page 492 
authorized the taking of a mortgage for $13,000, covering property 412 Broadway, Camden, New Jersey, for sundry trusts in participation certificates. A bond and mortgage were executed by Mollie Lavitt and Israel Lavitt, her husband, to the defendant, not as trustee, but individually, for that sum, dated September 1st, 1925, and duly recorded, and twenty-six certificates were issued by defendant in form as follows:
"THE CAMDEN SAFE DEPOSIT AND TRUST COMPANY, a New Jersey Corporation, hereby acknowledges that it holds as a trust investment, a certain mortgage made by Mollie Lavitt and Israel Lavitt, her husband, to Camden Safe Deposit and Trust Company for $13,000, dated Sept. 1, 1925, and recorded in the Register's Office of Camden County in Book 262 of Mortgages, page 499, c., covering premises 412 Broadway, Camden, New Jersey, described in the mortgage; said mortgage is divided into twenty-six fractional parts of $500 each, as evidenced by this and other concurrent certificates number from one to twenty-six inclusive.
This certificate represents Five Hundred Dollars of that amount and is held by the individual or trust estate certified by endorsement hereon and may be redeemed or transferred by this Company.
Witness, the corporate seal of Camden Safe Deposit and Trust Company and the Signature of its President the 3rd day of September, A.D. 1925.
CAMDEN SAFE DEPOSIT AND TRUST COMPANY. By Ephraim Tomlinson, (Corporate Seal) President. Attest:
 Herbert Fulton, Secretary."
The said mortgagors certified as follows:
"Mollie Lavitt and Israel Lavitt, her husband, named in the above Certificate hereby state and declare that they are the owners of the property covered by the mortgage above referred to, and that there is due thereon the principal sum of Thirteen Thousand Dollars with interest at 6% per annum; and that as said Camden Safe Deposit and Trust Company is, or may be desirous of holding said mortgage in fractional amounts for itself or for individuals or trust estates, they hereby further certify that this is one of twenty-six exact or similar certificates numbered from one to twenty-six inclusive, signed by Mollie Lavitt and Israel Lavitt, which in the aggregate represent said principal sum of Thirteen Thousand Dollars.
 MOLLIE LAVITT ISRAEL LAVITT." *Page 493 
Subsequently there appears on the certificate the following:
"The mortgage, in which this certificate represents a participating interest to the proportionate amount referred to therein, having been satisfied by the acquisition of title to the property covered by the same, such certificate now represents a corresponding proportionate interest in the net proceeds realized from the sale of such property when, if and as made.
Dec. 11, 1933."
Certificates Nos. 21 and 22, aggregating $1,000, were endorsed as follows:
"Date of registry: Sept. 3, 1925; in whose name registered: Camden Safe Deposit and Trust Co., Trustee under the will of Welling Schrack; Transfer Agent: Camden Safe Deposit Trust Co., Frank S. Norcross, Trust Officer."
On June 5th, 1930, these two certificates were taken over by the defendant, trustee under the deed of trust by Mollie W.B. Cox, and the certificates were endorsed showing that date as the date of registry, and registry in the name of the defendant, trustee for Mrs. Cox, and the signature of the transfer agent (the defendant) by C. Chester Craig, assistant trust officer.
The defendant, under authority of a resolution passed by its board of directors, December 10th, 1925, authorized a mortgage of $60,000, taken for sundry trusts in participation certificates, covering property of Merchantville Country Club, said mortgage to be guaranteed, principal and interest, by Independence Indemnity Company. The bond and mortgage for that amount were executed by the Merchantville Country Club to defendant, not as trustee, but individually, dated February 19th, 1926, and duly recorded, and defendant issued one hundred twenty participation certificates for $500 each in form similar to those issued in connection with the Lavitt mortgage. The declaration of the Merchantville Country Club was also in form similar to that of the Lavitts, and signed by its secretary. Four of these certificates, Nos. 72 to 75, inclusive, aggregating $2,000, were endorsed as being registered on February 19th, 1926, in the name of the defendant, *Page 494 
trustee under the will of Welling Schrack, deceased; and on June 5th, 1930, these four certificates were taken over by the defendant, trustee for Mollie W.B. Cox, and the certificates were endorsed showing that date as the date of registry in the name of defendant, trustee for complainant.
Thus it appears by the certificates that the money turned over to the defendant under the trust agreement was invested in these mortgage participation certificates. The lands covered by the Lavitt mortgage were taken over by deed to the defendant, individually, as appears by the statement on the Lavitt mortgage participation certificates. The deed was accepted from the Lavitts in lieu of foreclosure.
On June 5th, 1930, the defendant wrote to the complainant, advising her that the $3,000 turned over to the defendant under the deed of trust had been invested in participation certificates in the said two mortgages.
From time to time the defendant, through its trust department, rendered statements to complainant showing interest payments upon the investments, and sent checks to her for the net income.
It is alleged in the bill of complaint: (a) that defendant violated its duty to deal faithfully with complainant's moneys and to refrain from investing the same in property in which the defendant itself was personally interested or in which the interest of defendant individually might conflict with the interest of defendant as trustee; (b) that it violated its duty to keep the trust funds separate from all other funds and to refrain from making any investment which would complicate the trust funds with the rights of strangers to the fund; and that in investing the funds in the participation certificates it violated the statute law of this state regarding investment of trust funds in participation certificates; (c) that the real estate covered by the mortgages in question did not have such value in proportion to the amount of mortgages as would constitute a prudent investment for trust funds, and that defendant failed to properly administer the trust. Complainant seeks a decree requiring the defendant to take over the investments and to pay to the complainant the sum of $3,000 so held in trust, with interest. *Page 495 
The defendant had maintained a trust department for a great many years which had supervised the investment and administration of large sums of money held by the defendant as trustee for numerous estates under wills, and for individuals by virtue of written agreements, and had followed the practice, which seemed to have been prevalent with many trust companies, of investing trust funds in mortgages against which participation certificates were issued and transactions carried on as appears to have been done in this case.
While the Lavitt and Merchantville Country Club mortgages were executed to the defendant individually, yet, as appears by the resolutions authorizing these mortgages, they were taken for sundry trusts and testimony discloses that all of the participation certificates which represented shares in the mortgages were held for the particular trust and registered in the name of the individual or trust estate to which they belonged. Nothing in the testimony in this cause discloses that the defendant was personally interested in any of these participation certificates or had advanced from its individual funds any moneys for that purpose, and while it is contended that because of the provision in the certificates that the defendant might redeem or transfer such certificate, it might be inferred that the complainant was investing trust funds in property in which the defendant itself was personally interested or in which the defendant's interests individually might conflict with the interest of the defendant as trustee, I am unable to determine that such is the case. The defendant trust company kept separate accounts with each trust estate, was subject to the supervision of the department of banking and insurance of this state and did keep its trust investments separated from its individual investments; and it appears by statements from its trust department rendered to the complainant from time to time that she was kept advised of the nature of defendant's investments for her account.
The trust agreement seems to have contemplated that the trust funds might be invested in participation certificates representing an interest in a mortgage investment made by the defendant, and the right was given to the trustee, in the *Page 496 
case of the termination of the trust estate, to pay the equivalent of such certificates in cash. Mortgages, properly secured, for years have constituted a large part of the investments held by trustees and until the depression, which seems to have had its real inception in the latter part of 1931, were generally considered suitable and safe investments; and aside from the objection raised in this case to the form of the investment herein, there appears to be no question that the defendant acted in good faith and with proper care, and any loss which may eventually result from these investments cannot be attributed to the failure of the defendant trustee, but rather to the depreciation in the value and marketability of real estate prevalent not only in this community, but generally all over the country. The evidence as to market value of the real estate mortgaged by the Merchantville Country Club showed such value to be approximately $105,000 and the property of Lavitt $22,600, at the time the participation certificates were transferred from the Schrack estate to the defendant trustee of Mrs. Cox. These properties were appraised at considerably more at the time the mortgages were taken and the appraisements seem to have been carefully made and by competent appraisers.
At the time the trust fund of Mrs. Cox was invested in the participations in the two mortgages, they were not in default; and the transfer of the certificates from the Schrack estate to the defendant as trustee for Mrs. Cox was not, according to the evidence, for any purpose other than to permit a diversification of investments for the Schrack estate and to give Mrs. Cox the benefit of an investment yielding immediately a return of six per cent.; and while subsequently both of these mortgages became in default, there is nothing to indicate that such a condition could have been foreseen, because, commencing about a year after the investment was made, securities generally, including those held by trustees, depreciated in value somewhat rapidly due to the depression which affected real estate mortgages.
As to the contention of the complainant that the defendant violated an act of the legislature entitled "An act to amend *Page 497 
an act entitled `A supplement to an act entitled "An act concerning the investments of moneys and the retention of investments in certain cases,"' approved April nineteenth, one thousand nine hundred and twenty" (P.L. 1927 ch. 81 p. 144), by investing these funds in participation certificates, it seems to me that such is not the case. The investments, it appears, were interests in single mortgages represented by a series of participation certificates of equal amount, giving each holder equal rights in the mortgage in proportion to the number of certificates which was held. In the mortgages in question, the defendant did not act as a guarantor. The statute provides for the investment in participation certificates under certain conditions, among which is the requirement that the amount of the mortgages shall not exceed sixty per centum of the worth of the real estate covered by the mortgages; and then provides two methods of investment, as set forth in a proviso, as follows:
"And provided, further, that bonds and mortgages in parts of which any fiduciary may invest trust funds or, in the case of trust mortgages, the trust mortgage, together with any guarantees of payment, insurance policies and other instruments and evidences of title relating thereto shall be held for the benefit of such fiduciary and of any other persons interested in such bonds and mortgages by a trust company, bank or title guarantee corporation authorized to do business in this State, or jointly by such a corporation, and an individual who is a citizen andbona fide resident of this State, and in mortgages other than trust mortgages, that a certificate setting forth that such corporation, or such corporation and such individual jointly as the case may be, holds such instruments for the benefit of such fiduciary and of any other persons who may be interested in such bond and mortgage among whom the corporation or the individual jointly holding such instruments may be included, be executed by such corporation and delivered to each person who becomes interested in such bond and mortgage. Every corporation, or corporation and individual jointly, issuing any such certificates, shall keep a record in proper books of account of all certificates issued pursuant to the foregoing provisions."
The defendant herein clearly intended to follow the latter plan as appears from the resolutions passed by its board of directors authorizing the taking of these mortgages for sundry trusts and issuing the participation certificates in the form as hereinbefore outlined. The method adopted by the *Page 498 
defendant is in substantial compliance with the statute as I conceive it to be, even if the agreement under which the trustee held complainant's money required such compliance, because of the provision authorizing the investment of trust funds as in the judgment of the trustee should seem to be advisable, whether in securities authorized for the investment of trust funds by the laws of the State of New Jersey or otherwise.
An act of the legislature entitled "An act relative to investment by executors, administrators, trustees and other persons acting in a fiduciary capacity, in mortgages, shares or parts of bonds and mortgages, participation certificates in bonds and mortgages, and other interests in bonds and mortgages," relative to the investment of trust funds (P.L. 1933 ch. 204p. 444), which seems to have been passed for the purpose of ameliorating conditions caused by an unprecedented depression then existing, provided in sections 5 and 6 as follows:
"5. Any action or agreement or investment heretofore taken or made by any fiduciary by this act authorized to be taken or made, in the exercise of good faith and reasonable discretion, is hereby validated and confirmed for all purposes.
"6. If any portion of this act shall be declared unconstitutional, the validity of the remainder of the act shall not be thereby affected. This act shall be liberally construed for the effectuation of its purposes."
The provisions of this act confirm, if such should be necessary in this case, any action taken by the defendant herein in the management of this trust, having acted in good faith and with reasonable discretion.
In support of the contention that the defendant invested the complainant's moneys in property in which the defendant itself was personally interested, or in which the interest of defendant individually might conflict with the interest of the defendant as trustee, complainant relies somewhat on the case of McAllister
v. McAllister, 120 N.J. Eq. 407; affirmed by the court of errors and appeals, 121 N.J. Eq. 264, in which Vice-Chancellor Sooy said:
"There is no rule of law any better settled than that the duty of the trustee is to administer the trust committed to his care solely in the interest of the beneficiary and that he be *Page 499 
not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiary or, as stated by Professor Pomeroy in 2 Pom. Eq. Jur. (4th ed.) § 958:
"`The policy of equity is to remove every possible temptation from the trustee.'"
In that case the trust investment was made by the trustee upon a mortgage executed by one of the trustees on his individual property, but the facts are different in the instant case, because the defendant herein cannot be said to have invested the trust funds in its own property, nor can its good faith be questioned; even though the mortgages themselves were taken in the name of the trustee individually, they were for the sole benefit of sundry trusts as appears by the participation certificates issued.
There was no profit accruing to the defendant, trustee, from these investments, or from any source except that provided in the agreement by way of commission for the collection of income; nor was there any provision in the agreement under which the defendant held these trust funds directing in what manner they should be invested, as was the case in In re Shaw's Estate,122 N.J. Eq. 536, in which Vice-Chancellor Fielder held that investments made by a corporate trustee contrary to the directions of a testator's will are at its own risk and held the trustee accountable for loss sustained by reason of such investments.
In the case of Gates v. Plainfield Trust Co., 121 N.J. Eq. 460;affirmed, 122 N.J. Eq. 366, the investment of the trust funds was made in mortgage participation certificates issued by a mortgage company in which the trustee owned a controlling interest. Vice-Chancellor Egan in that case said (at p. 486):
"The good faith of the mortgage company in making the investments is not questioned. The law makes no distinction as to the sincerity behind the act of investing where the investment is without the bounds of legal approval. The trust company, having an interest in the mortgage company, and owing a duty of loyalty to the trust estate, might be faced with the embarrassing prospect of having to take a position *Page 500 
in favor of one of two conflicting interests. Its loyalty, in the circumstances, is not separable. Then, in such event, which of those interests would it serve?"
The precise question we have in the instant case does not seem to have been determined in any of these cases to which I have made reference; however, in the case of Springfield Safe Depositand Trust Co. v. First Unitarian Society, 200 N.E. Rep. 641, decided by the supreme judicial court of Massachusetts, there was a situation quite similar to that which exists in the instant case concerning the investment made by the trustee. In that case the trust fund was represented by investment in a participating interest in a note and mortgage which ran to the trustee without designation as trustee, and in which they assume that was for the convenience of the various trust estates interested therein and to enable the trust company as trustee to hold, administer and deal with the note and mortgage for the best interest of the trust. I quote from the opinion of Chief-Justice Rugg in which it was held that the trustee should not be charged with an improper or illegal investment. He said:
"The main question to be decided is whether upon the facts thus disclosed on this record the investment of this amount out of the Spaulding trust in a participating interest in a mortgage on real estate in this commonwealth is warranted as matter of law. The principle of law in this commonwealth governing the conduct of a trustee in making investments has been established for more than a century. A trustee is required to conduct himself faithfully and to exercise a sound discretion, and to be enlightened by observance as to how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of the capital. Good faith and sound discretion, informed by experience and wise observation, constitute the standard. That standard is comprehensive and remains fixed. It is not bound to particular classifications of securities, but continues as a safe guide under changed financial institutions and business customs, usages and investment combinations. * * * *Page 501 
"The facts set forth in the record and already summarized show that the kind of investment here assailed comes within the rule governing trust investments as just stated. Participating interests in mortgages have been approved as investments for trust funds held by trust companies by the consensus of opinion among the responsible officers of trust companies covering a considerable time and a large area of the country. Investments of that nature cannot be condemned under our rule so far as they rest upon good faith, sound discretion, and conformity to custom.
"The precise question is whether as matter of law such investments are permissible. That question has not arisen hitherto in this commonwealth. Investment of trust funds in securities of this nature has been upheld in other jurisdictions. The general principle is found in Am. Law Inst. Restatement,Trusts, § 227, comment j, in these words: `The mere fact that trust funds are combined with funds not held in trust or with funds of other trusts in making investments does not necessarily make the investments improper, provided that the investments are in other respects proper. Thus, an investment of trust funds in a participating interest in one or more first mortgages on land, or in a group of securities which are all proper trust investments, may be a proper trust investment. Such investments are not proper if they are not such as a prudent man would make of his own property having primarily in view the preservation of the estate and the amount and regularity of the income to be derived. * * * It was said in Re Union Trust Co., 219 N.Y. 514, 519;114 N.E. Rep. 1057, 1058: `The advantages that are frequently to be secured by combining trust funds to make a large and more satisfactory investment than can be made of the funds of one trust without combination are of sufficient importance and value to the several trust funds to overcome any disadvantage that may arise from the fact that the several owners of the investment may thereafter differ in the matter of handling the same. Trust funds have been, from time to time, combined for investment with satisfactory results, and the practice is generally recognized as proper for a trustee. * * * *Page 502 
"`Individual trustees ought to be scrupulously careful not to make investments of trust funds in their own names but always to indicate that they are made in a trust capacity. They are held to strict liability for violation of this duty. * * * But the books of account of the petitioner, the stringent provisions of statute as to the separation of trust investments, and the constant public supervision of its affairs show that no harm has come to the beneficiaries. * * *'
"It is the duty also of trustees holding two or more distinct trust funds to keep them separate and ordinarily not to invest them together. Lannin v. Buckley, 256 Mass. 78; 152 N.E. 71.
That principle has not been violated in the case at bar in its essential features. The mortgage was a single investment, but it was divided forthwith by the issuance of the certificates of interest to the several beneficiaries, which became at once a matter of record in its trust department and subject to periodical inspection and examination by the bank commissioner. Objection based on the possibility of transfer of certificates from one trust to another by the trustee, if in good faith, and otherwise not open to just criticism, is without merit. French
v. Hall, 198 Mass. 147, 152; 84 N.E. Rep. 438; 16 L.R.A.
(N.S.) 205.
"In the case at bar there is no contention that the petitioner did not exercise good faith and act for a proper purpose. The loss that has resulted to the beneficiaries is not due to conduct of the petitioner or the kind of investment made, but to adverse general financial conditions. In such circumstances there is no liability for breach of trust. Springfield National Bank v.Couse, 288 Mass. 262; 192 N.E. Rep. 529; 94 A.L.R. 1460; FirstNational Bank of Boston v. Truesdale Hospital, 288 Mass. 35;192 N.E. Rep. 150; Am. Law Inst. Restatement, Trusts § 179comment d. The interests of the beneficiary in the investment here assailed are as secure as if the mortgage had been expressed in terms to be to the petitioner as trustee. No general creditor of the petitioner could in any event secure any advantage over the beneficiaries of the trust. O'Gasapian v. Danielson,284 Mass. 27, 32; 187 N.E. Rep. 107; 89 A.L.R. 1159." *Page 503 
In the case of In re Cross, 117 N.J. Eq. 429, Mr. Justice Case, speaking for the court of errors and appeals in reversing a decree of the prerogative court, commented upon the conditions affecting the sale of securities which it seems to me has considerable bearing upon the circumstances of this case. He said:
"The treacherous path that lay before the investor, whether trustee or otherwise, in the spring and summer of 1931 (when it is suggested that the executors should have sold and reinvested) is apparent when, with the advantage of retrospection, we look upon the debacle that ensued. Favored forms of trust investment were sucked into the maelstrom — mortgage investments, corporate bonds, and even cash in bank. Following came the widespread apprehension of money inflation, in company with which was the doctrine, well received even in conservative circles, that participation in ownership equities was extremely desirable because of its proportionate share in the potential inflation of capital and earnings. However loudly it may now be said that people should have foreseen, most men of that degree of prudence and caution that we call ordinary did not foresee. * * *
"We find nothing in the proofs to challenge the good faith of the executors; and we do not find enough in derogation of their diligence and discretion to warrant, in our opinion, the surcharging of them for the potential losses suffered by the estate in the trying period from which we have not yet emerged."
Viewing the conduct and management by the defendant of the administration of the trust fund committed to its care by Mrs. Cox under the agreement, and viewing the transactions of the trustee in the light of all the conditions and circumstances existing since its creation, I am convinced that the defendant has acted in good faith and with reasonable discretion and cannot be held responsible for any loss, either ascertained at the time of the filing of the bill herein or then prospective, nor should the defendant be required to pay to complainant the said sum of $3,000 with interest, so held in trust, and take over said investments.
A decree will be advised dismissing the bill. *Page 504